UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                          :
In re:                                                    :
                                                          :   Chapter 11
COUDERT BROTHERS LLP,                                     :
                                                          :   Case No. 06-12226 (RDD)
                               Debtor.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                          :
DEVELOPMENT SPECIALISTS, INC.,                            :   Adv. Pro. No. 08-01467 (RDD)
in its capacity as Plan Administrator for                 :
Coudert Brothers LLP,                                     :
                                                          :
                                                          :
                               Plaintiff,                 :
                                                          :
v.                                                        :
                                                          :
JAMES B. VARANESE,                                        :
                                                          :
                                                          :
                               Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Bankruptcy Court of the Southern District of New York hereby files these proposed findings of fact and conclusions of law for review by the District Court of the Southern District of New York pursuant to 28 U.S.C. § 157(c)(1), Federal Rule of Bankruptcy Procedure 9033, and Local Bankruptcy Rule 9033-1, for entry of a final order confirming an arbitration award pursuant to 9 U.S.C. § 9 and entry of a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure made applicable hereto by Bankruptcy Rule 7055 and Local Rule 7055-2.

**PROPOSED FINDINGS OF FACT**

I.     Parties

Plaintiff Development Specialists, Inc., in its capacity as Plan Administrator of Coudert Brothers, LLP (the "Plan Administrator"), has moved this Court to confirm an arbitration award pursuant to 9 U.S.C. § 9 in the above-captioned adversary proceeding.

Coudert Brothers, LLP ("Coudert" or the "Debtor") was an international law firm headquartered in New York and organized as a New York limited liability partnership as of October 1, 2001. Defendant James B. Varanese ("Varanese") was a partner in the Debtor (Declaration of John G. McCarthy, dated September 30, 2016, ¶¶2, 3).

The Debtor dissolved on August 16, 2005 (the "Dissolution Date"). On August 23, 2005, the Executive Board of Coudert established a Special Situation Committee ("SSC") to oversee the wind down and dissolution of the Debtor (*Id.* ¶¶ 2, 5).

On September 22, 2006 (the "Petition Date"), the Debtor filed in this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, Case No. 06-12226 (the "Bankruptcy Case"). By Order dated August 27, 2008 (Bankruptcy Case, Doc. No. 878), this Court confirmed the First Amended Plan of Liquidation of Coudert Brothers LLP dated May 9, 2008 (as modified) (the "Plan") ( Bankruptcy Case, Doc. No. 894) (McCarthy Dec. ¶4).

On May 30, 2008, the SSC provided each partner in the Debtor, including Varanese, with a memorandum (the "May 30, 2008 Memorandum") setting forth detailed calculations of the amount of money the Debtor asserted was owed by that partner (*Id.* ¶5; Ex. A).

Pursuant to Section 5.2 of the Plan, on the Effective Date, the Plan Administrator became the exclusive representative of the Debtor's estate under Section 1123(b)(3)(B) of the Bankruptcy Code and was authorized to "assert, prosecute, pursue . . . all Claims, Causes of Action and actions to collect the Receivables, including against Non-Participating Partners . . .

2

and assert and enforce all legal and equitable remedies and defenses belonging to the Debtor or its Estate . . ." (Bankruptcy Case, Doc. No. 693).

Pursuant to Article 7 of the Plan, a former partner in the Debtor could participate in the Plan by executing a Participating Settlement Agreement with the Plan Administrator and fulfilling all of his/her obligations to the Debtor in connection with the Participating Settlement Agreement, thereby settling all of that partner's asserted obligations owed by him/her as set forth in the May 30, 2008 Memorandum (McCarthy Dec. ¶5).

Under Section 1.65 of the Plan, a "Participating Partner" was defined as "a Partner who executes a Participating Settlement Agreement with the Plan Administrator and fulfills all obligations to the Estate in connection with such Participating Settlement Agreement." Under Section 1.63 of the Plan, a "Non-Participating Partner" was defined as "any Partner other than a Participating Partner." (*Id.* ¶¶6-7).

Varanese was a partner of the Debtor and is a Non-Participating Partner as defined in the Plan (*Id.* ¶8).

## II.  Background and Procedural History

Within two weeks after the Plan's Effective Date, the Plan Administrator commenced adversary proceedings against various Non-Participating Partners, including Varanese. The adversary complaint against Varanese sought breach of contract damages for failure to reimburse or repay Coudert tax payments that Coudert had made on Varanese's behalf in the total amount of $4,241.55. The adversary complaint also sought to recover as alleged fraudulent transfers all payments to or on behalf of Varanese from the date the Debtor became insolvent. Varanese did not respond and ignored this Court's process (*Id.* ¶¶9-13).

The amended and restated Partnership Agreement dated as of May 11, 2001 (the "May 2001 Partnership Agreement") was the last such agreement to which Varanese was a party (*Id.* ¶14; Ex. B). The May 2001 Partnership Agreement contained an arbitration clause:

> **Arbitration:** Any dispute or controversy arising under or in connection with this Agreement among the parties subject hereto shall be determined by arbitration pursuant to the rules of the American Arbitration Association.
>
> **Site:** The arbitration shall be held in the City of New York.

On June 17, 2013, the Plan Administrator moved in the Bankruptcy Court to compel arbitration of the contract-related claims in several adversary proceedings where the partner defendants were domiciled in foreign countries, including the above-captioned adversary proceeding. By Order dated July 19, 2013, this Court granted the Plan Administrator's First Motion to Compel Arbitration Against Foreign Defendants (Bankruptcy Case, Doc. No. 1529), ordering that the contract-related claims shall be arbitrated pursuant to the applicable arbitration provision in the Debtor's Partnership Agreement and further ordering that, upon the parties' consent, the fraudulent transfer claims shall be arbitrated[1] (*Id.* ¶¶15-16).

### III. The Arbitration

On or about September 6, 2013, the Plan Administrator commenced an arbitration against ten foreign partners (the "Respondents"), including Varanese (*Id.* ¶18), entitled *DSI v. Bailleux, et al.*, Case No. 50-194-T-00850-13, before the International Centre for Dispute Resolution of the American Arbitration Association (the "ICDR Arbitration").

On February 14, 2014, Barbara A. Mentz, Esq., was duly appointed the sole arbitrator for the ICDR Arbitration (the "Arbitrator") (*Id.* ¶19). The Arbitrator conducted a preliminary hearing conference call on April 10, 2014 (*Id.* ¶20). Notice of this conference call and of the

---

[1] As fraudulent transfer claims are exempt from pre-petition arbitration clauses, the Plan Administrator had requested that this Court grant leave to arbitrate those claims only if the partner defendant consented to arbitrate such claims. Varanese did not consent to arbitrate the fraudulent transfer claim brought against him.

4

ICDR Arbitration was duly served on Varanese (*Id.*). Varanese did not respond to the Demand for Arbitration or otherwise participate in the ICDR Arbitration (*Id.* ¶21). Article 26 of the ICDR's rules address default and allow the arbitrations to proceed as long as the defaulting party has been duly notified[2] (*Id.* ¶22).

The Arbitrator decided to conduct all proceedings telephonically in light of the worldwide geographic diversity of the Respondents (*Id.* ¶24). Hearings were held by telephone on July 15, 2014 and August 1, 2014 (*Id.* ¶25). Notwithstanding having received due notice of these hearings, Varanese did not appear or otherwise participate in the Hearings (*Id.*).

In order to ensure that Varanese (and the other Respondents) received due process, the Arbitrator undertook several steps including issuing two orders, requiring the Plan Administrator to submit additional material, and conducting a conference call on October 30, 2014 (*Id.* ¶26). Due notice of all of these events was provided to Varanese, who did not object to either the Arbitrator's action or the materials submitted by the Plan Administrator (*Id.*). The Arbitrator also invited the Plan Administrator and the Respondents to submit additional evidence after the telephonic hearings (*Id.* ¶27). The Plan Administrator provided the additional evidence. (*Id.*) Varnoese neither objected to that evidence nor submitted his own evidence. (*Id.*)

The record of the ICDR Aribitration was closed in early 2015. (*Id.* ¶28).

### IV. The Arbitration Award

The Arbitrator issued her Final Award on September 30, 2015 (the "Final Award") (*Id.* ¶29). The Arbitrator certified that the Final Award was made in New York, New York (*Id.* ¶30). The Final Award determined that six of the Respondents owed the Plan Administrator US$267,806.53. The Final Award directed that the awards against the six Respondents include a

---

[2] One of the other Respondents, Jeremy Joseph Bartlett, challenged the venue of the ICDR Arbitration in New York. By order on June 23, 2014, the Arbitrator denied the challenge to venue and determined that venue was proper in New York (*Id.* ¶23).

total of 34 percent of the administrative fees and expenses of the ICDR on a proportionate basis. As to each Respondent, the Final Award included a schedule addressing specifically the claims against that Respondent.

Schedule J addressed the claims against Varanese. Under Schedule J, the Arbitrator determined that:

a. Varanese received due notice of the ICDR Arbitration and an opportunity to be heard;

b. Varanese was an equity partner in Coudert and a party to the May 2001 Coudert Partnership Agreement; and

c. the Plan Administrator had proven that Varanese (a) owed US$4,241.55 in damages for breach of contract; (b) owed pre-Award interest on that amount at nine percent per annum from August 1, 2008 through the date of the Final Award, September 30, 2015, pursuant to CPLR 5004 (US$2,735.97); and (c) must reimburse the Plan Administrator US$379 for his share of the ICDR administrative fees and the Arbitrator's compensation and expenses; the total amount of such award, therefore, was US$7,356.52 (the "Varanese Award").

On September 30, 2016, the Plan Administrator filed a motion in this Court (the "Motion") for, among other relief, an order confirming the Varanese Award.

Varanese has not paid any portion of the Varanese Award and he has not moved to vacate the Varanese Award or objected to the Motion.

V. **Constructively Fraudulent Transfers**

Coudert's financial condition was in a state of deterioration in 2004. That year, The American Lawyer reported that Coudert ranked 99 out of the 100 largest law firms in average profits per partner (Declaration of William A Brandt, Jr., executed on September 29, 2016 ("Brandt Dec."), ¶20). In early 2005, due to competitive pressures in the legal industry, as well

6

as some business decisions which had led to disappointing results, Coudert began exploring different strategic alternatives in an effort to increase profits and reduce expenses. Coudert was concerned that if it was unable to do so in an expeditious manner, its attorneys would begin leaving the firm in substantial practice group clusters or as entire office contingents. Coudert initially attempted to focus on improving profitability through client business development, and also explored a potential restructuring plan and/or merger with another firm (*Id*. ¶21). During this time, the Chairman of the firm and most of the Executive Board members decided to step down from their management roles, and partner defections from the firm began to increase (*Id*. ¶22).

A series of partner defections culminated on May 18, 2005, when all of the partners in Coudert's London and Moscow offices left the firm to join Orrick, Herrington & Sutcliffe LLP ("Orrick") (*Id.* ¶23). On May 19, 2005, as required under the terms of Coudert's loan agreements, Coudert advised Citibank, N.A. and JPMorgan Chase Bank, N.A. (collectively, the "Banks") of the developments with respect to the London and Moscow office departures. Because of the loss of partners in London and Moscow, Coudert no longer met the minimum number of partners required under its loan agreements with the Banks, which triggered Coudert's default under those loan covenants (*Id*. ¶24). Coudert stopped being viable as a going concern when these events happened, as events shortly thereafter confirmed (*Id*. ¶25).

On May 23, 2005, the Executive Board decided to pursue a combination of the entire firm with Baker & McKenzie ("Baker") in order to avoid dissolving the firm. In June 2005, Coudert entered into active merger discussions with Baker (*Id.* ¶26). Coudert also contemporaneously developed both a restructuring plan and a dissolution analysis. On June 9, 2005, a restructuring plan was sent to all partners which showed that Coudert was insolvent by approximately $30 million on a worst case basis. On June 13, 2005, a conference call was held with all partners to provide an overview of the restructuring plan (*Id*. ¶27). On June 22, 2005, a

presentation of the restructuring plan was made to the Banks. The Banks refused to grant Coudert a waiver of default under its loan agreements (*Id*. ¶28).

On August 3, 2005, Baker notified Coudert that it would not proceed with further firm-wide merger discussions (Brandt Dec., ¶29). After termination of merger discussions with Baker, the Executive Board continued to hold meetings from August 3 through August 8, 2005 to review all available alternatives. The Executive Board concluded that Coudert would not retain a sufficient number of partners in order to effectively implement a restructuring plan, and, as a result, decided to recommend winding down the firm (*Id*. ¶30). Coudert's partners voted on August 16, 2005 to dissolve the firm (*Id*. ¶31).

When Coudert ceased to be viable as a going concern on May 18, 2005, it became insolvent. After Coudert became insolvent on May 18, 2005, it made multiple transfers to Varanese. In June, July and August 2005, Coudert made interest payments to Varanese on his capital account in the amounts of $162.10, $157.19 and $111.83 respectively, for a total of $431.12. Also, in July 2005, Coudert paid Varanese $7,968.75 as a return of his capital in the firm. Coudert did not receive any fair consideration or reasonably equivalent value in exchange for these transfers. (*See generally* Declaration of Patrick J. O'Malley, executed on September 30, 2016.)

## PROPOSED CONCLUSIONS OF LAW

### I.   Authority

The Plan Administrator's Motion seeks not only confirmation of the Varanese Award but also entry of a default judgment on the foregoing fraudulent transfer claim. The Plan Administrator's motion involves both core and non-core matters under 28 U.S.C. § 157. The Bankruptcy Court cannot enter a final order or judgment with respect to the breach of contract claim covered by the Varanese Award without Varanese's consent. *Stern v. Marshall*, 564 U.S.

8

462, 478-82 (2011). A claim for fraudulent transfer similarly implicates a "private" as opposed to "public" right, and therefore, consistent with Article III of the United States Constitution, it appears that this Court cannot enter a final order or judgment with respect to the fraudulent transfer claim in the absence of Varanese filing a proof of claim in this Court. *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014); *In re Coudert Bros. LLP*, No. 11 Civ. 2785 (CM), 2011 WL 5593147 (S.D.N.Y Sept. 23, 2011).

As to confirmation of the Varanese Award and entry of a default judgment on the complaint's fraudulent transfer claim against Varanese, this Court has considered the Plan Administrator's Motion and files its herein proposed findings of fact and conclusions of law for review by the District Court pursuant to 28 U.S.C. § 157(c)(1); Federal Rule of Bankruptcy Procedure 9033; and Local Bankruptcy Rule 9033-1.

### II.     Confirmation of the Varanese Award

The ICDR Aarbitration and the issuance of the Varanese Award were in all respects proper with respect to Varanese, and therefore the Varanese Award is final and binding. In light of Varanese's failure to participate, after due notice in this adversary proceeding, to participate in the ICDR Arbitration and to pay the Varanese Award, a judgment on the Varanese Award is necessary in order to permit the Plan Administrator to enforce it.

The Plan Administrator's Motion to confirm the arbitration award is authorized by Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9. No tribunal was specified in the May 2001 Partnership Agreement's arbitration provision for confirmation of the award. Section 9 of the FAA provides that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." The Final Award was made within this District.

9

The Varanese Award was not the product of corruption, fraud, partiality or undue means, and is not subject to any of the grounds listed in the FAA for vacatur. 9 U.S.C. § 10. The Plan Administrator's Motion for confirmation of the Varanese Award was filed within one year of the Final Award's issuance.

Although Section 9 of the FAA does not specify the manner in which service is to be made on Varanese, who is not within any district in the United States, by agreeing to the May 2001 Partnership Agreement, which provided for arbitration in New York, Varanese consented to personal jurisdiction and waived objection to appropriate extraterritorial service. *Novorossiysk Shipping Co. v. China Pac. Prop. Ins. Co.*, 2006 U.S. Dist. LEXIS 80658, at *3-4 (S.D.N.Y. Apr. 17, 2006); *Marine Trading Lt. v. Naviera Commercial NayLamp S.A.*, 879 F. Supp. 389, 391 (S.D.N.Y. 1995). The Plan Administrator can use Rule 4 of the Federal Rules of Civil Procedure to serve Varanese. *Marine Trading Lt.* at 391-92. The Court can also approve another method designed to ensure Varanese receives notice of such Motion. *Power Elec. Distrib., Inc. v. Hengdian Grp. Linix*, Civ. No. 13-199 (ADM/HB), 2015 WL 880642, at *6 (D. Minn. Mar. 2, 2015).

### III.    Entry of Default Judgment on the Fraudulent Transfer Claim

The adversary complaint sought to recover as alleged fraudulent transfers all payments to or on behalf of Varanese from the date the Debtor became insolvent. Bankruptcy Rule 7055 incorporates by reference Rule 55 of the Federal Rules of Civil Procedure. Varanese has failed to plead or otherwise defend himself in this proceeding and has no objected to the Motion under Bankruptcy Rule 7055. Varanese has failed to appear in this adversary proceeding, and the District Court therefore has authority to enter a default judgment against him with respect to the Plan Administrator's claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). Varanese was an insider of Coudert throughout the period from May 18, 2005 until August 16,

2005, when the transfers at issue were made. Coudert did not receive fair consideration or reasonably equivalent value in exchange for such transfers to Varanese.

Between May 18, 2005 and August 16, 2005, Varanese received $8,399.87 in constructively fraudulent transfers from Coudert. (*See generally* Brandt Dec.; O'Malley Dec., ¶¶ 10-12). The Plan Administrator is entitled to judgment against Varanese on its Second Claim for Relief (Fraudulent Transfer) in the amount of $8,399.87 plus interest thereon from September 20, 2008, pursuant to 11 U.S.C. § 550 as Varanese was the initial transferee.

Varanese was properly served pursuant to Rule 4 of the Federal Rules of Civil Procedure with the notice of the Motion of the Plan Administrator to confirm the Varanese Award and for entry of a default judgment on the foregoing fraudulent transfer claim.

## CONCLUSION

Based on the foregoing, this Court respectfully recommends that the District Court adopt these proposed findings of fact and conclusions of law and grant the Plan Administrator's Motion (i) to confirm the Varanese Award in the amount of US$7,356.52, and direct the Clerk to enter judgment in that amount plus interest thereon from September 30, 2015; and (ii) to enter a default judgment with respect to the fraudulent transfer claim in the amount of US$8,399.87, together with interest thereon at the federal rate from September 20, 2008 to the date of judgment.

Dated: White Plains, New York
       November 21, 2016

                                            /s/Robert D. Drain
                                            HONORABLE ROBERT D. DRAIN
                                            UNITED STATES BANKRUPTCY JUDGE